**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAMER B. HOLTAN, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| PRETIUM RESOURCES, INC., JOSEPH OVSENEK, and TOM S.Q. YIP, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Ramer B. Holtan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Pretium Resources, Inc. ("Pretium" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Pretium; and (c) review of other publicly available information concerning Pretium.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Pretium securities between July 21, 2016 and September 6, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Pretium acquires, explores, and develops precious metal resource properties in the Americas.

3.      The Brucejack Project, or Brucejack Mine, is a mine located in northwestern British Columbia and is comprised of 4 mining leases and 6 mineral claims currently totaling 3,304 hectares in area.  The Valley of the Kings zone is the "heart of the Brucejack Project." This is the only material mineral project that Pretium is required to report under Canadian reporting regulations governing mineral properties. Therefore, the Brucejack Project is essential to Pretium's business and to the public market valuation of the business.

4.      On January 23, 2018, the Company disclosed lower gold production for the Brucejack Mine than previously projected, and also delayed achievement of steady state gold production and operation of the grade control program.

5.      On this news, the Company's share price fell $2.86 per share, or over 26%, to close at $7.93 per share on January 23, 2018, on unusually heavy trading volume.

6.      Then, on September 6, 2018, Viceroy Research published a report entitled "Pretium Resources – digging up dirt," alleging, among other things, that the Company's

"reported grades and reserves are significantly inflated, a much greater amount of waste is being dumped into local lakes, and more explosives are being utilized." The report further alleged that "management is scrambling to find consistent, high-grade ore to maintain the charade that its debt and equity are viable."

7.     On this news, the Company's share price fell $0.77 per share, or approximately 10%, to close at $6.94 per share on September 6, 2018, on unusually heavy trading volume.

8.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Brucejack Project is not a high-grade, high-output mine; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District, and the Company's securities are traded within this Judicial District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants

directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff Ramer B. Holtan, as set forth in the accompanying certification, incorporated by reference herein, purchased Pretium securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Pretium is incorporated under the laws of British Columbia, Canada with its principal executive offices located in Vancouver, British Columbia, Canada.  Pretium's common stock trades on the NYSE exchange under the symbol "PVG."

16.     Defendant Joseph Ovsenek ("Ovsenek") has been the President since May 2015 and Chief Executive Officer since January 1, 2017. Prior to May 2015, Defendant Ovsenek was the Executive Vice President of the Company.

17.     Defendant Tom S.Q. Yip ("Yip") was the Executive Vice President and Chief Financial Officer of the Company at all relevant times.

18.     Defendants Ovsenek and Yip, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Pretium acquires, explores, and develops precious metal resource properties in the Americas.

20.     The Brucejack Project, or Brucejack Mine, is a mine located in northwestern British Columbia and is comprised of 4 mining leases and 6 mineral claims currently totaling 3,304 hectares in area.  The Valley of the Kings zone is the "heart of the Brucejack Project." This is the only material mineral project that Pretium is required to report under Canadian reporting regulations governing mineral properties. Therefore, the Brucejack Project is essential to Pretium's business and to the public market valuation of the business.

### Materially False and Misleading
### Statements Issued During the Class Period

21.     The Class Period begins on July 21, 2016.  On that day, the Company issued a press release entitled "Valley of the Kings Positive Mineral Resource Estimate Update." Therein, the Company stated, in relevant part:

> Pretium Resources Inc. is pleased to report an updated Valley of the Kings Mineral Resource estimate in accordance with National Instrument 43-101 for its Brucejack Project, where construction and development continues on schedule for commissioning of the underground mine in mid-2017.
>
> *Updated Mineral Resource Estimate Confirms Geological Model for Mine Production Planning*
>
> The 2015-2016 Valley of the Kings infill drill program was undertaken to support production planning in the Valley of the Kings and designed to convert Indicated Mineral Resources into Measured Mineral Resources in the areas to be mined in the first three years of the current mine plan (1320-meter level to 1200-meter level) by increasing drill density to 7.5-meter to 10-meter centers. The program, which consisted of 63,740 meters in 367 drillholes, was successful in increasing the Measured Mineral Resources in the Valley of the Kings by 58% to 1.9 million ounces (3.5 million tonnes grading 17.0 grams per tonne gold).
>
> The program was also successful in adding Indicated Mineral Resources, with Measured and Indicated Mineral Resources in the Valley of the Kings now totalling 9.1 million ounces of gold (16.4 million tonnes grading 17.2 grams per tonne gold), an increase from the December 2013 Valley of the Kings Mineral Resource estimate of Measured and Indicated Mineral Resources which totalled

8.7 million ounces of gold (15.3 million tonnes grading 17.6 grams per tonne gold). . . .

In summary, the updated Mineral Resource estimate has confirmed the geological model for the Valley of the Kings, and combined Measured and Indicated Resources have not materially changed. The Valley of the Kings remains open to the east and west along strike, and at depth. . . .

*Mine Plan Update*

With the completion of the updated Mineral Resource estimate for the Valley of the Kings and success in increasing confidence in the estimate in the areas to be mined in the first three years, the Valley of the Kings mine plan will now be updated in preparation for production development expected to commence later this year.

22.     On December 15, 2016, the Company issued a press release entitled "Positive Valley of the Kings Mineral Reserve Update; Senior Management Changes." Therein, the Company stated, in relevant part:

Pretium Resources Inc. is pleased to report a positive updated Valley of the Kings Mineral Reserve estimate for its Brucejack Project, where construction and development continues on schedule for commissioning of the underground mine in mid-2017. The Company also reports the appointment of Robert Quartermain to Executive Chair and Joseph Ovsenek as President and Chief Executive Officer effective January 1, 2017.

*Updated Valley of the Kings Mineral Reserve Estimate and Mine Plan*

Highlights of the updated Mineral Reserve estimate include:

- Proven Mineral Reserves in the Valley of the Kings increased to 1.6 million ounces gold (3.3 million tonnes grading 14.5 grams per tonne gold) which is sufficient for the first three years of mine life.

- Proven and Probable Mineral Reserves in the Valley of the Kings increased to 8.1 million ounces gold (15.6 million tonnes grading 16.1 grams per tonne gold).

Areas of gain in the Mineral Reserves are attributed to the following factors:

- Increasing drill density to 7.5-meter to 10-meter centers allowed for conversion of a significant amount of Probable Reserve to the Proven Reserve category. Mining stopes within the existing Mineral Reserve model along with expansion of the previous Indicated Mineral Resource wire frame accounted for an increase of approximately 620,000 ounces of gold.

- Several new, adjacent stopes were added to the previous mine plan as a result of the infill drilling reaching beyond the previously defined ore. This expansion to the mine plan accounts for an increase of approximately 300,000 ounces of gold.

- Adjustments were made to the stope orientation and design parameters, along with the addition of grade to the background mineralization for the estimate which had previously been modeled at zero grade. Estimating waste blocks within the stopes with the July 2016 Mineral Resource estimate grade accounts for an increase of approximately 200,000 ounces of gold.

23.     On May 1, 2017, the Company issued a press release entitled "Commissioning Underway at Brucejack Mine." Therein, the Company stated, in relevant part: "[W]et commissioning is nearing completion at the Brucejack Mine. The commissioning process was initiated in April and the first ore has been introduced to the process in preparation for production."

24.     On July 3, 2017, the Company issued a press release entitled "Pretium Declares Commercial Production at Brucejack Mine." Therein, the Company stated, in relevant part: "During the month of June, the process plant at Brucejack processed 70,805 tonnes of ore (87.4% of one-twelfth of yearly nameplate capacity) for an average of 2,360 tonnes per day."

25.     On August 10, 2017, the Company issued a press release entitled "Pretium Reports Second Quarter Results; Gold Sales Have Commenced." Therein, the Company stated, in relevant part:

> In July, the process plant at Brucejack continued to operate near nameplate capacity processing 83,667 tonnes of ore (99.9% of one-twelfth of yearly nameplate capacity) for an average of 2,699 tonnes per day from low-grade stockpiles, development muck and the introduction of stope ore. Under the terms of the credit agreement among the Company and its lenders, the Completion Date is the first day of the calendar month immediately following the first period of two consecutive calendar months during which the process plant processes ore at an average rate of 85% nameplate capacity (985,500 tonnes per year or 2,700 tonnes per day). As a result, the Completion Date for the Brucejack Mine is August 1, 2017.

26.     On September 21, 2017, the Company issued a press release entitled "Brucejack Mine Update." Therein, the Company stated, in relevant part:

Pretium Resources Inc. is pleased to report that the ramp-up continues to advance at the high-grade gold Brucejack Mine, and the mine is targeting steady state production for the end of 2017.

With the grade ramping up and the mill now exclusively processing stope ore, production of doré and flotation concentrate has increased. As a result of the increased production and the concomitant proceeds from the sale of doré and flotation concentrate, the Company is expected to achieve positive working capital by the end of this quarter.

All of the main operating units in the mill building are performing as expected, and the plant is consistently operating at nameplate capacity of 2,700 tonnes per day or better. Optimization of the gold recovery process is ongoing and the start-up issues encountered within the gold room have been addressed. The production of metallic slag has been eliminated. Gold recovery at the shaker table has significantly improved, and overall, gold recoveries are currently exceeding 95%.

27. On November 14, 2017, the Company filed a 6-K report in which it reported financial results for the three and nine months ended September 30, 2017. Therein, the Company stated, in relevant part:

During the three months ended September 30, 2017, a total of 261,262 tonnes of ore, equivalent to a throughput rate of 2,840 tonnes per day, was processed.

The mill feed grade was 10.5 grams per tonne gold and recovery was 96.5%. We continue to review the mill process to optimize recoveries. We plan to complete the implementation of a grade control system with the target of achieving steady-state production by the end of 2017.

With the grade ramping up and the mill now exclusively processing stope ore, production of doré and flotation concentrate has increased. All of the main operating units in the mill building are performing as expected, and the plant is consistently operating at nameplate capacity of 2,700 tonnes per day or better. Optimization of the gold recovery process is ongoing and the start-up issues encountered within the gold room have been addressed.

28. The above statements identified in ¶¶ 19-25 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Brucejack Project is not a high-grade, high-output mine; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

29. On January 23, 2018, the Company disclosed lower gold production than

previously disclosed, and also delayed achievement of steady state gold production and operation of the grade control program. These problems were disclosed in press release issued by the Company entitled "Brucejack Mine Production Update; 2018 Guidance." Therein, the Company stated, in relevant part:

### Fourth Quarter 2017 and Six Months Ramp-Up Production Highlights

- 70,281 ounces of gold produced in the fourth quarter of 2017, for a total of 152,484 ounces of gold produced during the first six months of production ramp-up;
- 95.8% gold recovery rate in the fourth quarter of 2017 for an average gold recovery rate of 96.2% for the first six months of production ramp-up;
- 271,501 tonnes of ore milled in the fourth quarter of 2017 for a total of 532,763 tonnes of ore milled as at December 31, 2017;
- 2,951 tonnes per day processed on average during the fourth quarter of 2017 for an average processing rate of 2,895 tonnes per day during the first six months of production ramp-up.

### Establishing Long-Term Mine Infrastructure

*2017 Mining and Infrastructure Development*

During and prior to the second half of 2017, underground development focused on establishing sills and opening levels laterally at the Brucejack Mine in support of the long-term mine plan, which will provide optionality in mining stopes. Access to the broadest possible range of stopes will maximize stope blending and is expected to improve the management of production grades as the ramp-up continues at the Brucejack Mine. In the third quarter of 2017, underground development established a sill on the 1320-meter Level of the Brucejack Mine, the first of two sills planned for the first year of mining at Brucejack. During the third quarter and through the fourth quarter, underground development established a sill at the 1200-meter Level of the mine, and work continued on the lateral development to the east and west.

*2018 Mining and Infrastructure Development*

Establishment of the two sills has opened up two mining horizons for 2018, the 1200-meter Level to the 1320-meter Level and the 1320-meter Level to the 1440-meter Level. With 30-meter sublevels between sills, these two sills are expected to provide access to eight mining levels by mid-year. With the continued extension of the mining levels to the east and west within the two mining horizons, supported by continued infill drilling (see *Infill Drilling* below), mining level access to stopes with a greater range of grade is expected to be available through 2018.

**Establishing Mine Grade Control**

*Underground Sampling*

The grade control program originally planned to be operational early in the fourth quarter of 2017 is now expected to be operational in the middle of the first quarter of 2018. When fully operational, the grade control program is expected to provide an estimated grade for each ring blasted within a long-hole stope. This information will allow the blending of ore from the various stopes on a ring-by-ring basis to smooth out head grade to the mill.

The sample splitting station, a key component of the grade control program that provides a homogenous sample for each ring blasted within a long-hole stope, has been re-engineered to better handle day-to-day mining operations. Modifications have been completed and commissioning of the sample splitting station is underway. The upgraded and more robust sample splitting station is expected to be fully operational by the middle of this quarter.

*Infill Drilling*

Another component of the grade control program is infill drilling of stopes to 7.5-meter to 10-meter centers (the infill drill spacing planned for long-term mining operations at Brucejack) prior to mining. A reverse circulation underground infill program will commence in February on a trial basis. Reverse circulation drilling will provide a larger sample per meter and should be faster and more cost effective than core drilling, which has been used for infill drilling to date. If the trial program is successful, reverse circulation drilling will be adopted for long-term grade control infill drilling.

**Reconciliation of 2017 Ramp-Up Production**

Grade reconciliation to the reserve model for the period August 1, 2017 to December 31, 2017 was approximately 75% to 80%. During the period, ore from the stopes developed on the 1200-meter Level sill provided approximately 25% of mill feed. These stopes were mined in establishing the 1200-meter Level sill as part of the long-term mine plan and had a lower drill density than stopes on other levels of the mine. As the grade control program becomes operational and mining moves up from the 1200-meter Level into areas with higher drill density, reconciliation is expected to improve.

\* \* \*

**Achieving Steady State Production - 2018 Guidance**

*H1 2018 Guidance*

As the ramp-up of mining into areas of higher definition drilling continues, steady state gold production is now expected to be achieved in mid-to-late 2018. Gold production at Brucejack for the first half of 2018 is expected in the range of 150,000 ounces to 200,000 ounces, for total first year ramp-up gold production of

302,000 ounces to 352,000 ounces (July 1, 2017 to June 30, 2018). The achievement of steady state mining in areas with higher drill density and the grade control program in full operation will enable the Company to provide further production guidance later in 2018.

*2018 Financial Guidance*

All in sustaining costs1 for the first half of 2018 are expected to range from US$700 per ounce gold sold to US$900 per ounce gold sold. As operations continue to ramp-up at the Brucejack Mine through 2018, an increased focus will be placed on operational efficiency to reduce costs.

30.     On this news, the Company's share price fell $2.86 per share, or over 26%, to close at $7.93 per share on January 23, 2018, on unusually heavy trading volume.

31.     On March 8, 2018, the Company issued a press release entitled "Pretium Reports Fourth Quarter and Year End 2017 Results." Therein, the Company stated, in relevant part:

During the six months ended December 31, 2017, a total of 532,763 tonnes of ore, equivalent to a throughput rate of 2,895 tonnes per day, was processed.

The mill feed grade was 9.4 grams per tonne gold and recovery was 96.2%. We continue to review the mill process to optimize recoveries. . . .

During the six months ended December 31, 2017, 552,205 tonnes of ore were mined, equivalent to a mining rate of 3,001 tonnes per day.

During the fourth quarter, gold production was lower than expected as higher-grade stopes scheduled to be mined in December encountered operational issues (equipment down-time and mining execution), that prevented them from being mined and delivering higher grade ore to the mill. Both long-hole drills went down and the stopes could not be drilled off in time. Mining also encountered a hang-up when blasting a long-hole slot. These issues, combined with the limited stope inventory (no other high-grade stopes were accessible in the quarter) contributed to the lower than expected gold production.

Pretivm has taken a number of steps to address these operational issues. To improve access and build stope inventory, the rate of underground development has been increased to 700 meters per month for 2018, up from the 420 meters originally contemplated in the Brucejack Feasibility Study. In addition, a third long-hole drill is now on site to provide back-up and contribute to the build-up of stope inventory.

32.     On May 10, 2018, the Company reported financial results for the quarter ended March 31, 2018.  Therein, the Company stated, in relevant part:

"The implementation of operational grade control has had a positive impact on our ability to consistently deliver high-grade ore to the mill as we ramp-up

production," said Pretium President & CEO Joseph Ovsenek. The Brucejack Mine is generating free cash flow, and we are on track to achieving H1 2018 guidance of $900 to $700 per ounce of gold sold. We remain confident that we will deliver on our H1 2018 AISC guidance, as well as our production guidance of 150,000 to 200,000 ounces of gold and expect to achieve steady-state production by mid-to-late 2018."

**First Quarter Production Overview**

● Production totaled 75,689 ounces of gold and 94,730 ounces of silver.
● 10.9 grams per tonne gold mill feed grade for March; average 9.1 grams per tonne gold mill feed grade for the quarter.
● Gold recoveries averaged 96.8%.
● Process plant throughput averaged 2,905 tonnes per day for a total of 261,443 tonnes.

33.     On August 9, 2018, the Company reported financial results for the quarter ended June 30, 2018. Therein, the Company stated, in relevant part:

"Our cash balance increased by more than $72 million through the quarter to $142.5 million as a result of our improved production at lower costs," said Joseph Ovsenek, President & CEO of Pretium. "In the first half of the year, we've reached steady state production, fully implemented our grade control program and met our production guidance. We intend to build on this positive momentum for the remainder of the year, firmly establishing Pretium as a premier high-grade gold producer."

**Second Quarter Production Overview**

● Production totaled 111,340 ounces of gold and 118,205 ounces of silver.
● Mill feed grade averaged 14.9 grams per tonne gold for the quarter.
● Gold recoveries averaged 97.7%.
● Process plant throughput averaged 2,604 tonnes per day for total of 236,990 tonnes of ore.

34.     The above statements identified in ¶¶ 29-31 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Brucejack Project is not a high-grade, high-output mine; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

35.     On September 6, 2018, Viceroy Research published a report entitled "Pretium

Resources – digging up dirt," alleging, among other things, that the Company's "mining results have been distorted."  Specifically, the report alleged:

> ▪ The overwhelming majority of our research indicates Pretium manipulated the results of its bulk sample program through an overreliance on samples taken from the Cleopatra vein, thereby artificially inflating Pretium's grades and reserve projections for the Brucejack Mine. . . .

> ▪ Government documents indicate Pretium is moving approximately double the tonnage from the underground mine than disclosed to investors. This suggests reported grades and reserves are significantly inflated, a much greater amount of waste is being dumped into local lakes, and more explosives are being utilized. Pretium's operational plan has experienced dramatic changes in a short amount of time, leading us to believe that management is scrambling to find consistent, high-grade ore to maintain the charade that its debt and equity are viable.

> ▪ Pretium founder and chairman, Robert Quartermain's only mine operating experience at Pirquitas, an Argentinian silver mine owned by Silver Standard, resulted in a ~53% reserve cut and subsequent shutdown. A number of Quartermain's management team left Silver Standard to operate Pretium.

> ▪ As of Q2 2018, Pretium has ~$700M of debt (excl. convertible notes) with an effective interest rate of ~15%. If Pretium can't make or re-negotiate the payment, then Pretium may be unable to remain a going concern. We believe this deadline has provided an incentive for Pretium to inflate its results through the near-term depletion of the Cleopatra vein and take more rock out of the ground than disclosed and planned.

36.   On this news, the Company's share price fell $0.77 per share, or approximately 10%, to close at $6.94 per share on September 6, 2018, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

37.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Pretium securities between July 21, 2016 and September 6, 2018, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

38.   The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Pretium's common shares actively traded on the

NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Pretium common stock were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Pretium or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Pretium; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

43.     The market for Pretium's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Pretium's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Pretium's securities relying upon the integrity of the market price of the Company's securities and market information relating to Pretium, and have been damaged thereby.

44.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Pretium's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Pretium's business, operations, and prospects as alleged herein.

45.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pretium's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

46.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

47.     During the Class Period, Plaintiff and the Class purchased Pretium's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

48.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Pretium, their control over, and/or receipt and/or modification of Pretium's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pretium, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

49.     The market for Pretium's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Pretium's securities traded at artificially inflated prices during the Class Period.  On October 9, 2017, the Company's share price closed at a Class Period high of $12.01 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Pretium's securities and market

information relating to Pretium, and have been damaged thereby.

50.     During the Class Period, the artificial inflation of Pretium's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pretium's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Pretium and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

51.     At all relevant times, the market for Pretium's securities was an efficient market for the following reasons, among others:

(a)     Pretium shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Pretium filed periodic public reports with the SEC and/or the NYSE;

(c)     Pretium regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Pretium was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

52.     As a result of the foregoing, the market for Pretium's securities promptly digested current information regarding Pretium from all publicly available sources and reflected such

information in Pretium's share price. Under these circumstances, all purchasers of Pretium's securities during the Class Period suffered similar injury through their purchase of Pretium's securities at artificially inflated prices and a presumption of reliance applies.

53.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

54.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Pretium who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

55.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Pretium's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

57.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Pretium's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

58.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Pretium's financial well-being and prospects, as specified herein.

59.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Pretium's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Pretium and its business

operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

60.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

61.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Pretium's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

62.    As a result of the dissemination of the materially false and/or misleading

information and/or failure to disclose material facts, as set forth above, the market price of Pretium's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Pretium's securities during the Class Period at artificially high prices and were damaged thereby.

63.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Pretium was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Pretium securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

64.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

66.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67.     Individual Defendants acted as controlling persons of Pretium within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's

operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69.     As set forth above, Pretium and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 7, 2018                    **GLANCY PRONGAY & MURRAY LLP**


By:   *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Avenue, Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Ramer B. Holtan*

## SWORN CERTIFICATION OF PLAINTIFF

## PRETIUM RESOURCES, INC. SECURITIES LITIGATION

I, Ramer B. Holtan individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.      I have reviewed the complaint and authorized its filing and the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the Pretium Resources, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Pretium Resources, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

9/7/2018
_____
Date

DocuSigned by:
_____
5AAD159988B2471...
                                        Ramer B. Holtan

**Ramer B. Holtan's Transactions in Pretium Resources, Inc. Common Stock (PVG)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 10/11/2016 | Bought | 500 | $8.6300 |
| 12/27/2016 | Bought | 100 | $7.4992 |
| 01/03/2017 | Bought | 100 | $8.5064 |
| 01/03/2017 | Bought | 50 | $8.5067 |
| 01/17/2017 | Bought | 130 | $10.4100 |
| 01/19/2017 | Bought | 70 | $10.0900 |
| 01/25/2017 | Bought | 50 | $10.5000 |
| 02/02/2017 | Bought | 180 | $11.0362 |
| 02/02/2017 | Bought | 100 | $11.0000 |
| 02/06/2017 | Bought | 100 | $12.2594 |
| 02/06/2017 | Bought | 100 | $11.5400 |
| 02/06/2017 | Bought | 220 | $11.3494 |
| 02/06/2017 | Bought | 200 | $11.3400 |
| 02/07/2017 | Bought | 100 | $12.1566 |
| 02/28/2017 | Bought | 100 | $10.3090 |
| 02/28/2017 | Bought | 100 | $10.1754 |
| 03/14/2017 | Bought | 100 | $9.5000 |
| 03/14/2017 | Bought | 100 | $9.6000 |
| 04/28/2017 | Bought | 600 | $9.8200 |
| 10/26/2017 | Sold | -400 | $10.8724 |
| 01/24/2018 | Sold | -200 | $8.3538 |
| 01/25/2018 | Sold | -200 | $7.6039 |
| 01/25/2018 | Sold | -200 | $7.7150 |
| 02/23/2018 | Sold | -100 | $6.3639 |
| 02/23/2018 | Sold | -200 | $6.3800 |
| 03/01/2018 | Sold | -200 | $6.3638 |

**Ramer B. Holtan's Transactions in Pretium Resources, Inc. Options**

| Date | Transaction Type | Contract Type | Exp / Strike | Quantity | Unit Price |
|---|---|---|---|---|---|
| 10/17/2017 | Bought | Call | Jan 19, 2018 / $15 | 10 | $0.4500 |
| 10/30/2017 | Bought | Call | Jan 19, 2018 / $15 | 25 | $0.2400 |
| 11/02/2017 | Bought | Call | Jan 19, 2018 / $15 | 20 | $0.1900 |
| 11/14/2017 | Bought | Call | Mar 16, 2018 / $15 | 20 | $0.3000 |
| 11/14/2017 | Bought | Call | Jan 19, 2018 / $15 | 20 | $0.1000 |