UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PRETIUM RESOURCES INC.
SECURITIES LITIGATION

Master File No. 18 Civ. 8199

**ORDER**

LORETTA A. PRESKA, Senior United States District Judge:

This is a putative securities fraud class action brought by lead plaintiff Aurico Gold Fund LP and plaintiffs Nicholas Barnes and Robert Friedman (together, "Plaintiffs") against Pretium Resources Inc. ("Pretium") and two of its executives, Joseph Ovsenek ("Ovsenek") and Tom S.Q. Yip ("Yip"). (See Consolidated Amended Class Action Complaint, dated June 21, 2019 ("Complaint" or "CAC") [dkt no. 22].) Plaintiffs assert claims for primary and secondary violations of the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 and the corresponding Rule 10b-5. Defendants have moved to dismiss the Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b). (Notice of Motion, dated Aug. 27, 2019 [dkt. no. 27].) For the reasons explained below, Defendants' motion is GRANTED.

1

I. **Background**

**Brucejack Mine and the 2014 Mine Plan.** Pretium is a Canadian precious metals mining company whose common stock trades on the New York Stock Exchange. (CAC ¶¶ 2, 14, 27.) In 2010, Pretium acquired the rights to develop an underground gold mine located in British Columbia called the Brucejack Mine. (Id. ¶¶ 2, 27, 28.) In 2014, after an exploratory phase, an outside consultant engaged by Pretium prepared a technical report containing a "mine plan" for the Brucejack mine, which provided a detailed blueprint on how Pretium would develop and operate the mine. (Id. ¶¶ 38.)

The mine plan included comprehensive estimates on virtually all aspects of the mining project, including development timetables, cost estimates, and projections on the quantity and grade of mineable gold located in the Brucejack region. (Id. ¶¶ 25, 38, 45.) Of significance to this lawsuit, the mine plan also estimated how much "waste rock" Pretium would have to extract from the ground on a yearly basis. (Id. ¶¶ 38, 40.) Waste rock is unusable rock that a mining company must haul out as it digs tunnels to reach areas (called "stopes") rich in gold ore. (Id. ¶¶ 19.) For the first two years of development before the mine went online, the mine plan contemplated that Pretium would excavate around 28,000 tons of waste rock per month. (Id. ¶ 40.)

**Increased Waste Rock Excavation.** Pretium reported its actual drilling results to Canadian mining regulators in filings called

2

Annual Reclamation Reports ("ARRs") in each year beginning in 2016. (Id.) Pretium's ARRs reflect that from 2015 until early 2016, Pretium extracted waste rock at a rate of between approximately 23,000 and 24,500 tons per month. (Id.) Pretium's ARRs reveal, however, that beginning in April 2016, Pretium started rapidly accelerating its waste rock excavation and eventually far overshot what the mine plan contemplated. (Id. ¶ 41.) For the last nine months of 2016, Pretium averaged around 70,000 tons of waste rock per month, and, in all, Pretium extracted around 330,000 more tons of rock than the mine plan called for. (Id.) Due to increased excavation, Pretium's cost for developing the Brucejack mine significantly exceeded the mine plan's estimates. (Id. ¶ 42.)

Plaintiffs allege that the substantial uptick in waste rock excavation during the mine's developmental phase -- a period when Pretium had no revenues -- indicates that Pretium must have found "serious flaws" in the mine plan and decided to abandon it. (Id. ¶¶ 43, 44.) According to Plaintiffs, "[i]t simply makes no sense that a company whose entire success depended on completing mine development as quickly and cheaply as possible would take such a drastic step to extend the drilling program and extract substantially more rock at substantially greater costs unless they had discovered that their prior mine plan was not economically viable." (Id. ¶ 43; see also Plaintiff's Opposition to Defendants' Motion to Dismiss, dated Oct. 28, 2019 ("Opp.") [dkt. no. 30] at

3

1 ("That [Defendants] were deviating so sharply from the mine plan creates only one plausible inference -- they did not find the gold that their 2014 report predicted and they were scrambling to salvage the mine by searching underground for gold.").)

Pretium officially started commercial mine production in July 2017. (CAC ¶ 45.) Every quarter after the mine's launch, Pretium failed to deliver the high-grade gold ore that the 2014 technical report predicted. (Id.) Ultimately, in 2019, Pretium abandoned the 2014 technical report and downgraded its estimate of the gold grade in the Brucejack Mine. (Id. ¶ 49.) Pretium stated that its 2019 updates were "based on the six quarters of mining operations at Brucejack since commercial production commenced in July 2017" and explained that gold grade projections had "been decreased from 16.1 grams per tonne to 13.8 grams per tonne (a 14% decrease) to account for more internal waste than was anticipated." (Id.)

**Challenged Disclosures.** After April 2016, when Pretium ramped up waste rock excavation, the company made a series of statements referencing the mine plan that Plaintiffs now challenge as false or misleading, including the following:

- In late 2016, Pretium reported that drill tests had increased geological confidence in the amount and grade of ore buried in the Brucejack Mine's "Valley of the Kings" region. (Id. ¶¶ 51, 53, 55, 57.) Pretium further reported that "[w]ith the completion of the updated Mineral Resources estimate for the Valley of the Kings and success in increasing confidence in the areas to be mined in the first three years, the . . . mine plan will now be updated in preparation for production development expected to commence later this year." (Id.)

4

- In a December 2016 press release, Pretium again reported on increased geological confidence in the Valley of the King's gold reserves and stated that "new, adjacent stopes were added to the previous mine plan as a result of the infill drilling reaching beyond the previously defined ore." (Id. ¶¶ 59, 65.)

- At a February 2017 conference, an attendee asked how Pretium's rock stockpile "reconciled with the model." (Id. ¶ 61.) Ovsenek replied: "All I can say is that while we're doing our development and we're cutting into the stopes we're expecting to see certain vein types in the stopes and we're seeing those vein types and we're seeing the visible gold so we believe the model is working out the way it should be." (Id.)

- Pretium also made disclosures referencing its "long-term mine plan." For example, in a January 2018 press release, it stated that "[d]uring and prior to the second half of 2017, underground development focused on establishing sills and opening levels laterally at the Brucejack Mine in support of the long-term mine plan, which will provide optionality in mining stopes." (Id. ¶ 67; see also id. ¶ 69.)

Plaintiffs contend that all these disclosures were materially false or misleading for claiming that, at the time the disclosures were made, Pretium "was following the mine plan it had set forth in 2014" when "in reality Pretium had drastically altered" and "wholly abandoned that plan" because it "was unviable." (See id. ¶¶ 52, 54, 56, 58, 60, 62, 64, 66, 68, 70; see also id. ¶ 44 (alleging that one of Pretium's statements about updating the mine plan was "wholly false and misleading . . . because it implied Pretium had not already abandoned their mine plan and massively expanded the scope of their development").)

**Drops in Pretium's Stock Price.** In January 2018, Pretium issued a press release revealing that in the fourth quarter of 2017, the ore Pretium milled had a much lower grade than projected

5

in the 2014 technical report. (Id. ¶ 71.) On this news, Pretium's stock price fell over 26% on heavy trading volume. (Id.) Then, in April 2018, Pretium reported its first quarter 2018 production results, again disclosing that the grade of ore Pretium milled was disappointingly low. (Id. ¶ 72.) Pretium's stock fell over 26% following that disclosure. (Id.) Finally, in September 2018, a short seller named Viceroy Research published a report noting that Pretium's 2017 ARR showed that Pretium had removed far more rock than the mine plan contemplated, which cast doubts on Pretium's reported ore grades and reserves. (Id. ¶ 73.) Pretium's stock fell roughly 10% after the Viceroy report, as "investors learned for the first time that Pretium's mine plan was not viable, and that Pretium had altered the plan in a desperate attempt to find sufficient high grade ore, but had failed." (Id. ¶ 74.)

**Prior Litigation.** This is not the first securities lawsuit extracted from the Brucejack Mine. Beginning in 2013, investors represented by Plaintiffs' lawyers alleged that Pretium committed securities fraud by endorsing mineral resource projections prepared by an independent expert without disclosing a different expert's view that drilling tests did not support the projections. See In re Pretium Res. Inc. Sec. Litig., 256 F. Supp. 3d 459 (S.D.N.Y. 2017). The district court dismissed the claims and the Court of Appeals affirmed, finding that plaintiffs had failed to

allege any actionable misrepresentations or omissions. See Martin v. Quartermain, 732 F. App'x 37 (2d Cir. 2018).

## II. **Legal Standards**

On a Rule 12(b)(6) motion to dismiss, the complaint's well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). In other words, the complaint's factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (alteration and quotation marks omitted).

In addition, securities fraud claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act, ("PSLRA"), 15 U.S.C. § 78u-4(b). Rule 9(b) provides that fraud claims must "must state with particularity the circumstances constituting fraud" and requires the plaintiff to "(1) specify the

7

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills, 12 F.3d at 1175. Under the PSLRA, the plaintiff must plead facts "giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313-14 (2007) ("The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate or defraud.'" (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193-94 & n.12 (1976))).

### III. Discussion

#### a. Section 10(b) and Rule 10b-5 Claims

Plaintiffs assert a claim against Pretium and Ovsenek for violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C § 78j(b), and the Securities and Exchange Commission's Rule 10b-5, 17 C.F.R. § 240.10b-05. (CAC ¶¶ 88-98.) "To state a claim for relief under § 10(b) and Rule 10b-5, plaintiffs must allege that [defendants] (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiff's reliance was the proximate cause of their injury."

8

Lentell v. Merill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005) (citation and internal quotation marks omitted).

### i. Misstatements/Omissions

As a threshold issue, the Court must determine whether the disclosures Plaintiffs challenge are assertions of fact or opinion. All the statements give commentary or updates on, or tacitly express confidence in, aspects of Pretium's mine plan, which provided estimates and projections for developing and administering the mine. (See, e.g., CAC ¶¶ 23-25, 38.) In the earlier wave of litigation regarding the Brucejack Mine, the Court of Appeals held that comparable disclosures were statements of opinion rather than fact. See Martin v. Quartermain, 732 F. App'x 37, 40-41 & n.1 (2d Cir. 2018) (noting that "[e]xpressions of optimism," "projections about the future," and "[e]stimates" are "well-established species of opinion" (citations and internal quotation marks omitted)). The Court similarly concludes that the disclosures at issue here are expressions of opinion and therefore subject to standard laid out in Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund, 575 U.S. 175 (2015).

In Omnicare, the Supreme Court explained that opinion statements can be false or misleading in three ways. First, an opinion statement is false if the speaker did not truly hold the view he or she professed. Omnicare, 575 U.S. at 184. Second, if an opinion statement contains "embedded" supporting facts, it is

9

actionable if the factual assertions were untrue. Id. at 185-86. Third, an opinion, "though sincerely held and otherwise true as a matter of fact, may nonetheless be actionable if the speaker omits information whose omission makes the information misleading to a reasonable investor." Tongue v. Sanofi, 816 F.3d 199, 210 (2d Cir. 2016) (citing Omnicare, 575 U.S. at 194-95). Applying that tripartite framework, The Court finds that Plaintiffs have not alleged any actionable statements.

The first two Omnicare tests are not applicable here. Although Plaintiffs argue for liability under those tests, they are working with square pegs and round holes. (See Opp. at 14-16.) To illustrate with an example, when Plaintiffs challenge the statement that "[s]everal new, adjacent stopes were added to the previous mine plan as a result of the infill drilling," they are not arguing that Pretium did not believe the mine plan had been updated (Omnicare #1) or that the fact of the update or infill drilling having taken place was untrue (Omnicare #2). Instead, they are claiming that Pretium misleadingly suggested that it was still "following the mine plan" when it had actually "altered its plans" because the mine plan "was unviable," as reflected by the undisclosed increase in waste rock excavation. (CAC ¶¶ 43-44, 65-66.) That is a theory of misleading omission and is only amenable to analysis under the third Omnicare test.

In fleshing out the substance of that third test, <u>Omnicare</u> teaches that reasonable investors expect "not just that the [speaker] believes the opinion (however irrationally), but that it fairly aligns with the information in the [speaker's] possession at the time." <u>Omnicare</u>, 575 U.S. 188-89. To allege a misleading omission, the plaintiff "must identify particular (and material) facts going to the basis for the [speaker's] opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." <u>Id.</u> at 194. The "core inquiry" is "whether the omitted facts would 'conflict with what a reasonable investor would take from the statement itself." <u>Tongue</u>, 816 F.3d at 210 (quoting <u>Omnicare</u>, 575 U.S. at 189). The Supreme Court has cautioned, however, "against an overly expansive reading of the statute, noting that '[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts,' and adding that '[a] reasonable investor does not expect that every fact known to [a speaker] supports its opinion statement." <u>Id.</u> (quoting <u>Omnicare</u>, 575 U.S. at 189). An opinion therefore "is not necessarily misleading when [a speaker] knows, but fails to disclose, some fact cutting the other way." <u>Id.</u> (quoting <u>Omnicare</u>, 575 U.S. at 189).

Plaintiffs contend that Defendants' failure to disclose the higher-than-anticipated waste rock numbers while simultaneously expressing confidence in the mine plan misleadingly suggested that

11

Defendants had not deviated from the plan and that it remained viable. (See, e.g., Opp. at 1, 7-10, 13-18.) The Court disagrees. Despite Plaintiffs' mischaracterizations, Pretium's statements were not affirmations of categorical confidence in all aspects of the mine plan or of specific confidence in the plan's waste rock projections. Take, for instance, Pretium's July 2016 statement that the "mine plan will now be updated" based on "the completion of the updated Mineral Resource estimate" and "success in increasing confidence in the estimate in the areas to be mined in the first three years." (CAC ¶ 51.) Here, Pretium was commenting on drilling tests that increased a technical measure of "confidence" in the amount of available ore. This is a narrow statement about how the mine plan would be updated -- it is not a blanket confirmation of all the plan's components and contains nothing confirming the plan's waste rock projections.

Although investors might have liked to have received waste rock data in this and similar disclosures, Pretium's failure to provide it does not render the statements misleading. The securities laws "do not create an affirmative duty to disclose any and all material information," Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44 (2011), and information need not be disclosed "simply because it may be relevant or of interest to a reasonable investor," Resnik v. Swartz, 303 F.3d 147, 154 (2d Cir. 2002). Rather, disclosure is only required "when necessary

12

to make the statements made, in the light of the circumstances under which they were made, not misleading." Matrixx, 563 U.S. at 44 (citation and internal quotation marks omitted). Considered in context, Defendants' disclosures about the mine plan could not have been fairly construed by reasonable investors as expressing confidence in the plan's waste rock projections or the plan as a whole. Defendants' failure to disclose the waste rock excavation numbers therefore did not render the statements misleading.

To whatever extent Pretium's statements could be interpreted as broad expressions of confidence in the mine plan's viability, Defendants' failure to disclose the waste rock figures would still not be actionable. Plaintiffs' theory is that by expressing confidence in the mine plan without supplying the waste rock data, Pretium misled investors because the data showed that the plan was abandoned as unworkable. The problem with this theory is that, as Omnicare made clear, an opinion is not misleading merely because an issuer knows facts "cutting the other way." Omnicare, 575 U.S. at 189. Securities fraud plaintiffs must do more than show that the speaker knew or had access to countervailing information: they must show that the speaker's opinion did not "fairly align[]" with all the information that was then available. Id. Plaintiffs do not satisfy that standard here. Insofar as the increased tunneling and waste rock excavation weighed against a cheerful view of the mine plan's overall viability, Plaintiffs have not plausibly

13

alleged that it pushed the scale's needle so far as to render continued faith in the plan unreasonable. Indeed, that the plan was not obviously doomed at the time of Defendants' disclosures is reflected by Pretium's independent expert's assessment in 2019 that "[t]he execution of the mine plan closely matches the mine plan as disclosed in the 2014 FS." (Declaration of Neil P. Kelly, dated Aug. 27, 2019 [dkt. no. 29], Ex. 16, at 16-1.)[1] Plaintiffs have therefore failed to establish that any of Defendants' disclosures were false or misleading under the securities laws.

**b. Scienter**

To allege scienter under the PSLRA, the plaintiff must plead, with particularity, "facts giving rise to a strong inference" of either "an intent to deceive, manipulate, or defraud" or recklessness. Emps.' Ret. Sys. Of Gov. of the V.I. v. Blanford, 794 F.3d 297, 305 (2d Cir. 2015) (quoting Ernst & Ernst, 425 U.S. at 188). A plaintiff may allege scienter through showing "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Moran Chase Co., 553 F.3d 187, 198 (2d Cir. 2009). "A

---

[1] In reviewing a motion to dismiss, the Court may consider "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

14

complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324.

Plaintiffs do not rely on a motive/opportunity theory and instead try to establish scienter through circumstantial evidence. (Opp. at 22-23.) First, they point to Ovsenek's statement that when Pretium cut into the stopes, it saw visible gold and the gold vein types Pretium had expected, which indicated that "the model is working out the way it should be." (Id. at 22.) Plaintiffs argue that this shows Ovsenek had information about the mine's development contradicting Pretium's statements and that Pretium was digging more tunnels than the mine plan contemplated in a desperate search for ore. Second, Plaintiffs contend that scienter is shown by the Pretium's purported disclosure of one set of waste rock numbers to regulators and another to investors. (Opp. at 23.)

Considered holistically, these allegations do not support a finding of scienter. Plaintiffs' first argument -- i.e., Ovsenek's statement that visible gold supported Pretium's model shows he knew information indicating that the model was actually unviable -- makes no sense. Ovsenek's statement is in no way evidence of scienter. With respect to the waste rock excavation data, Plaintiffs have not alleged anything indicating that Pretium disclosed conflicting numbers to regulators and investors. The

15

disclosures Plaintiffs challenge do not mention waste rock at all, and Plaintiffs concede that Pretium's reports to Canadian regulators disclosing the waste rock data were accessible to the public. (See Opp. at 19 n. 9 (noting that the reports were "posted to a Canadian Government website after an unspecified delay to allow for screening for confidential information under Canada's Freedom of Information Act.").) That the public had access, however delayed, to Pretium's regulatory waste rock disclosures kicks the legs out from any inference of scienter. Given that the waste rock data would ultimately become available to the public, Defendants had virtually no incentive to disclose conflicting data to investors, and there are no allegations that they did so. Plaintiffs thus failed to allege a strong inference of scienter.

IV. **Sections 20(a) Claims**

Plaintiffs also assert a control person claim against Ovsenek and Yip under Exchange Act § 20(a). (CAC ¶¶ 99-102.) To establish control person liability, the plaintiff must allege: "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007). Because, as discussed above, Plaintiffs have failed to establish a primary violation of the securities laws, their § 20 claim necessarily collapses and is

16

dismissed. See In re Merrill Lynch Auction Rate Sec. Litig., 851 F. Supp. 2d 512, 530 (S.D.N.Y. 2012).

**V.  Leave to Amend**

In a single sentence at the end of their opposition brief, Plaintiffs request leave to amend if the Court dismisses the Complaint. (Opp. at 25.) Although Rule 15(a)(2) directs courts to "freely grant leave" to amend a pleading "when justice so requires," Fed. R. Civ. P. 15(a)(2), courts may deny leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). Plaintiffs have not proposed any specific amendments, and the Court has serious doubts that they can add any allegations that would shore up their Complaint. As a result, the Court will not grant Plaintiffs' request, but Plaintiffs may move for leave to amend to further explain how any amendment would cure the defects identified above. See Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) (noting that leave may be denied "where the request gives no clue as to how the complaint's defects would be cured" (citation and internal quotation marks omitted)).

## VI. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiffs may move for leave to amend within thirty days of this order. The Clerk of the Court is directed to close the open motion [dkt. no. 27].

**SO ORDERED.**

Dated: New York, New York
February 27, 2020

*[signature: Loretta A. Preska]*

LORETTA A. PRESKA
Senior U.S. District Judge